IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC VIORAL,                          : Civil No. 1:24-CV-283
                                      :
            Plaintiff                 :
                                      :
      v.                              :
                                      : (Chief Magistrate Judge Bloom)
MICHELLE KING, Acting                 :
Commissioner of Social Security,[1]   :
                                      :
            Defendant                 :

## MEMORANDUM OPINION

## I.    Introduction

Eric Vioral filed a Title II application for a period of disability and disability insurance benefits on September 17, 2021. (Tr. 18). Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Vioral was not disabled from his alleged onset date of disability of August 14, 2021, through December 23, 2022, the date of the ALJ's decision. (Tr. 20-30).

---

[1] Michelle King became the acting Commissioner of Social Security on January 20, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Michelle King is substituted as the defendant in this suit.

Vioral now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. (Doc. 15). After a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. <u>Statement of Facts and of the Case</u>

On September 17, 2021, Vioral applied for disability insurance benefits. (Tr. 18). He cited an array of physical and mental impairments, including cervical and lumbar spondylosis with radiculopathy, obesity, asthma, dysesthesia, obstructive sleep apnea, atrial fibrillation, adjustment disorder, depression, and generalized anxiety disorder. (Tr. 21, 220, 229). Vioral was 51 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as an auto mechanic. (Tr. 28).

With respect to these alleged impairments, the record revealed the following: on October 23, 2020, Vioral received a thoracic x-ray at University of Pittsburgh Medical Center ("UPMC") Pinnacle. (Tr. 324). Dr. Tamra Heimert found evidence in those x-rays of mild upper thoracic levoscoliosis and mild degenerative changes in Vioral's mid-lower thoracic spine. (Tr. 324). Around the same time, Vioral began attending physical therapy at Select Physical Therapy ("SPT") for treatment of lower back pain, bilateral lower extremity paresthesia, right shoulder and arm pain, and cervical radiculopathy. (Tr. 403-40). Vioral continued treatment at SPT until July 27, 2021. (Tr. 440).

On November 18, 2020, Vioral began treatment at Casses Chiropractic Clinic ("CCC") where he underwent chiropractic care for thoracic pain, lumbar radiculopathy, segmental and somatic dysfunction in the lumbar, sacral, hip, and pelvis areas, and muscle spasms in his back. (Tr. 335). He continued treatment at CCC until May 17, 2021. (Tr. 355).

Vioral had a neurological examination at WellSpan Neurology on January 14, 2021. (Tr. 382-400). Vioral's intake showed indications of

paresthesias, generalized weakness, and memory difficulty. (Tr. 383). Dr. Nikolov Borislav ultimately diagnosed chronic bilateral low back pain with bilateral sciatica, paresthesias, generalized weakness, and memory difficulty. (Tr. 391). Dr. Borislav ordered, *inter alia*, a lumbar MRI. (Tr. 393). That MRI was performed in March of 2021, and revealed severe degenerative disc disease at L5-S1 and mild associated spondylotic stenosis. (Tr. 375, 502). Vioral also received a cervical MRI at this time, which showed right posterior lateral disc herniation at C6-7, moderate degenerative disc disease at C5-6 and C6-7, severe stenosis of both neural foramina at C5-6, and small right foraminal disc protrusion at C5-6. (Tr. 502). Vioral was prescribed gabapentin (100 mg, three times daily) and discussed a potential return to neurosurgery with Certified Registered Nurse Practitioner ("CRNP") Melissa Michaels. (Tr. 502, 505).

Vioral returned to WellSpan Neurosurgery, and on March 26, 2021, Dr. Matthew Maserati diagnosed Vioral with chronic bilateral low back pain with bilateral sciatica and paresthesia. (Tr. 368-69). On May 28, 2021, Dr. Maserati recorded Vioral still appeared symptomatic from bilateral lower extremity dysesthetic pain, and that the condition was

gradually worsening. (Tr. 360). Dr. Maserati diagnosed Vioral with three additional conditions: chronic pain syndrome, cervical radiculopathy, and neuropathic pain of uncertain etiology. (*Id.*). He increased Vioral's dosage of gabapentin to 300mg three times daily, and recommended Vioral try a new type of spinal cord stimulator. (*Id.*).

On July 15, 2021, Vioral received a L5-S1 interlaminar epidural steroid injection at SPT. (Tr. 513). On August 20, 2021, Vioral reported to CRNP Michaels that he was having neck pain which radiated down his right arm, causing numbness and tingling. (Tr. 510). CRNP Michaels concluded that Vioral was unable to tolerate a higher dose of gabapentin. (*Id.*). A physical examination showed Vioral was experiencing tenderness to palpation over cervical paraspinal musculature on the right trapezius, cervical facet loading mildly positive to the right, pain with cervical extension and flexion, restricted cervical range of motion to the right, positive Spurling's sign on the right, and "4+/5" shoulder abduction. (Tr. 514). CRNP Michaels offered Vioral a cervical epidural injection. (Tr. 515). Vioral eventually accepted and received the epidural, but in a

November 11, 2021, follow-up at WellSpan, reported he derived "minimal benefit." (Tr. 500).

Also in November of 2021, Vioral completed a function report pursuant to his application for benefits. (Tr. 240-48). Vioral alleged that he was not able to lift objects of more than 10-20 pounds without experiencing pain, that he had difficulty with sitting or standing for prolonged periods, that he could not bend or stoop over for anything besides a "short time [,]" and that he was unable to reach up or out for more than a few minutes before arm numbness set in. (Tr. 240). As to his activities of daily living, Vioral reported that he was able to prepare quick meals, do light cleaning and load and unload the dishwasher for ten minutes a day, and do laundry, although he needed help carrying the laundry basket. (Tr. 243). He explained that he could manage shopping for light grocery items but had to have heavier items, such as bottled water, delivered. (Tr. 244). Vioral indicated his impairments affected his abilities to lift, bend, stand, reach, walk, sit kneel, climb stairs, and complete tasks. (Tr. 246). Vioral stated his limitations prevented him from going on vacations, taking long rides in the car, working, performing

6

yardwork, fishing, playing in poker tournaments, and throwing a ball with his grandkids. (Tr. 242). Vioral's wife filled out a third-party function report around the same time that largely corroborated Vioral's report. (Tr. 231).

On January 12, 2022, Vioral underwent an internal medicine consultative examination with Dr. Ahmed Kneifati pursuant to Vioral's application for benefits. (Tr. 614-30). Dr. Kneifati diagnosed Vioral with hypertension, heart disease, atrial fibrillation, shortness of breath, history of asthma, degenerative disc disease of lumbar spine L5-S1 with radicular pain, and multiple degenerative disc disease cervical spine C5 to C7 with radicular pain especially in the right upper extremity with numbness. (Tr. 617). Dr. Kneifati opined that, due to diminished cervical and lumbar range of motion and atrial fibrillation, Vioral could only occasionally lift or carry a maximum of ten pounds. (Tr. 619).

It is against this factual backdrop that the ALJ conducted a hearing in Vioral's case on December 13, 2022. (Tr. 38). Vioral and a vocational expert both testified at this hearing. (Tr. 38-54). Following this hearing, the ALJ issued a decision denying Vioral's application for benefits. (Tr.

7

20-30). In that decision, the ALJ first concluded that since Vioral's alleged onset of disability, he had not engaged in substantial gainful activity. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Vioral had the following severe impairments: cervical and lumbar spondylosis with radiculopathy, obesity, asthma, dysesthesia, and obstructive sleep apnea. (*Id.*). The ALJ further concluded that Vioral had the additional medically determinable impairments of adjustment disorder and generalized anxiety disorder but found these impairments to be nonsevere. (Tr. 21). At Step 3 the ALJ determined that these impairments did not meet or equal the severity of a listed impairment under the Commissioner's regulations. (Tr. 23).

Between Steps 3 and 4 the ALJ concluded that Vioral retained the following residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except limited to frequent balance and kneel, occasional climbing of ramps and stairs, stoop, crouch and crawl, never climbing ladders, ropes or scaffolds, occasional rotation, flexion and extension of the neck, occasional bilateral feel, and must avoid exposure to extreme cold, wetness, vibration, irritants and unprotected heights.

8

(Tr. 24).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, the prior administrative medical findings, and Vioral's reported symptoms. (Tr. 24-26). As to Vioral's physical impairments, the ALJ found that Vioral's reported symptoms could have been caused by his determinable impairments, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence found in the record." (Tr. 26). In reaching that conclusion, the ALJ found that the treatment record revealed Vioral required only conservative treatment, and that despite his reported pain, he was "able to shower and dress daily, shop, do laundry, cook and perform light household cleaning." (*Id.*). Similarly, the ALJ noted Vioral's history of asthma and sleep apnea, and upon consideration of his medical records in this area, limited Vioral "to a range of light work with environmental restrictions." (Tr. 27). The ALJ found Vioral's mental impairments were not severe enough to cause more than mild limitations. (*Id.*).

The ALJ next considered the medical opinion evidence. The ALJ found the opinions of the state agency medical consultants, Dr. Jennie-Corinne Rebecca Baublitz-Brenenborg and Dr. Roman Oleh Bilynsky, largely persuasive. (Tr. 27). Those doctors opined that Vioral should be "limited to light work," based on "the findings of degenerative disc disease . . . his utilization of pain management, and his ability to perform light activities of daily living." (*Id.*). The ALJ found these limitations "consistent with [Vioral's] report that he can walk [a half] mile and the findings of non-antalgic gait on examination and intact sensation and strength." (*Id.*). The ALJ then provided for more restrictive postural and environmental limitations than opined by these providers to account for Vioral's subjective complaints of pain and his asthma. (*Id.*).

In contrast, the ALJ found that Dr. Kneifati's opinion was not persuasive, reasoning that "Dr. Kneifati's findings are not supported by his examination findings." (Tr. 28). The ALJ also concluded that Dr. Kneifati's opinion that Vioral could only lift and carry up to ten pounds "is inconsistent with [Vioral's] own statement (and his wife's) that he can lift up to 20 pounds." (*Id.*).

10

As to the mental health evaluations, the ALJ found the state agency psychological consultants' opinions persuasive. (Tr. 28). He found the opinion of Stacy Trogner, Psy.D. to be partially persuasive, in that he agreed that her general findings were supported by her own examination, and that those findings were consistent with the record. (*Id.*). However, the ALJ found that the overall record supported only mild limitations as opposed to Dr. Togner's moderate limitations. (*Id.*).

At Step 4, the ALJ found that Vioral could not perform his past work but found at Step 5 that Vioral could perform other jobs that existed in significant numbers in the national economy, such as small products assembler, cashier II, or cleaner. (Tr. 29). Having reached these conclusions, the ALJ determined that Vioral had not met the demanding showing necessary to sustain this claim for benefits and denied this claim.

This appeal followed. (Doc. 1). On appeal, Vioral challenges the adequacy of the ALJ's decision arguing that the ALJ erred in his consideration of Dr. Kneifati's opinion and Vioral's subjective symptoms. (Doc. 15 at 9, 15). As discussed in greater detail below, having considered

11

the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision is supported by substantial evidence, and we will affirm the Commissioner's denial of this claim.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court.

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."

*Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether

the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable

14

judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a

15

severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an

16

individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected

the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions.

The plaintiff filed this disability application in September of 2021, after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the

19

amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc.*

*Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir.2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what

evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms in light of the entire administrative record. SSR 16-3p.

22

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's

23

subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### E.    This Case Will Be Affirmed.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

As we have explained, Vioral contends that the ALJ erred in his treatment of Dr. Kneifati's opinion, as well as Vioral's subjective

symptoms. However, as we will discuss, we conclude that the ALJ's decision is supported by substantial evidence. Accordingly, we will affirm the Commissioner's decision.

### 1. The ALJ Did Not Err in His Treatment of Dr. Kneifati's Opinion.

Vioral first contests the ALJ's treatment of Dr. Kneifati's opinion. He asserts that, by merely summarizing the evidence, the ALJ did not properly weigh the evidence. He further points to evidence in the record that, in his view, supports a finding that he is disabled.

Before considering the specific errors alleged here, we note that "summarizing the evidence" is essentially the purpose of the ALJ's decision. Per the statutory law governing Social Security Appeals:

> "Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior

administrative medical finding from one medical source individually."

20 C.F.R. § 404.1520c(b)(1).

All that is required by the ALJ, in consideration of any given medical opinion, is to address the "most important factors" of persuasiveness, supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ explicitly addressed both of those mandatory factors in the portion of his decision dedicated to Dr. Kneifati's opinions, reasoning that Dr. Kneifati's opinion was not supported by his own examination findings and was inconsistent with Vioral's reported symptoms. (*See* Tr. 28). The ALJ's decision therefore "articulate[d] how [the ALJ] considered the medical opinions . . . from that medical source together in a single analysis using the factors [of supportability and consistency]." 20 C.F.R. § 404.1520c(b)(1). Accordingly, the plaintiff's contention that the ALJ improperly summarized the evidence is unavailing.

Vioral's arguments regarding the ALJ's treatment of Dr. Kneifati's opinion are equally unavailing. Vioral asserts that the ALJ failed to address specific diagnostic findings, as well as other evidence that Vioral

26

believes supported Dr. Kneifati's asserted limitations, and as such, the ALJ should have found this opinion persuasive. But these arguments, in essence, amount to a request that we reweigh the evidence, which we may not do. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 ("[W]e must not substitute our own judgment for that of the fact finder."). Further, the ALJ's treatment of Dr. Kneifati's opinion specifically cites to medical evidence that contradicts Dr. Kneifati's limitations in his opinion. (*See* Tr. 28). Accordingly, we cannot conclude that the ALJ's treatment of Dr. Kneifati's opinion warrants a remand.

Vioral further argues that if the ALJ found that Dr. Kneifati's findings were unsupported by his own examination findings, the ALJ "should have, logically [,]" contacted Dr. Kneifati and asked him to clarify this discrepancy. (Doc. 15 at 14) (citing 20 C.F.R. § 404.1519p(b)). Indeed, the regulations provide that an ALJ may contact a consultative examining source if the ALJ finds the opinion to be "inadequate or incomplete." § 404.1519p(b). But there is no indication that the ALJ in this case found Dr. Kneifati's opinion to be inadequate or incomplete; rather, the ALJ found that the limitations set forth in the opinion were

27

not supported by Dr. Kneifati's examination and were not consistent with the medical evidence as a whole. Thus, there was no requirement that the ALJ contact Dr. Kneifati to further address this medical opinion. *See e.g.*, *Cleinow v. Berryhill*, 311 F. Supp. 3d 683, 684-85 (E.D. Pa. 2018) (finding no error in the ALJ's failure to contact the consultative examiner where "the ALJ finds the doctor's opinion inconsistent with the claimant's medical records.") (citation omitted).

In sum, we conclude that the ALJ's consideration of Dr. Kneifati's opinion was adequately explained and supported by substantial evidence in the record. Accordingly, we find no basis to remand on this issue.

## 2. There Was No Error in the ALJ's Evaluation of Claimant's Symptoms

Vioral also challenges the ALJ's treatment of his subjective symptoms and other record evidence. Vioral alleges the ALJ improperly drew a negative inference from Vioral's failure to follow through with certain medical treatment and failed to draw a necessary positive credibility inference from Vioral's work history. (Doc. 15 at 15, 19). The ALJ is entitled to rely on evidence of noncompliance with treatment and activities of daily living in assessing a claimant's credibility. *See Vega v.*

28

*Comm'r of Soc. Sec.*, 358 F. Appx. 372, 375 (3d Cir. 2009) (reasoning that and ALJ's reliance on noncompliance with treatment to assess a claimant's credibility did not require a remand) (nonprecedential); *See also* SSR 16-3P at *9.

SSR 16-3P requires the ALJ to "consider" possible reasons for such failures, but it does not impose any duty of articulation. SSR 16-3P at *9. The same is true for work history. *Id.* at *12. But the ALJ's decision here surpasses his obligations and articulates his considerations. The medical treatment evidence consideration is articulated where the ALJ references a lack of record evidence and specific MRI findings. (Tr. 25). The work history argument was implicitly considered by the ALJ's overall assessment of Vioral's credibility. (*Id.*). Accordingly, the plaintiff's arguments that the ALJ improperly treated this evidence are unavailing.

Vioral also argues that the ALJ erred generally by not explicitly identifying why his decision apparently credited evidence of normal findings over evidence of abnormal findings, and because the ALJ "cited no evidence which suggested that Mr. Vioral could engage in substantial

29

gainful activity." (Doc 15 at 16-17). The ALJ's obligations in explaining his decision do not reach so far as Vioral posits. The ALJ is only required to articulate his considerations of evidence in such a way that it "will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning." 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017). The ALJ listed both normal and abnormal findings together before concluding that the record as a whole did not support a finding of disability. (Tr. 26). That is sufficient for us to trace the reasoning: the ALJ found the normal evidence outweighed the abnormal evidence. Similarly, the ALJ identified medical record facts, examination findings, and activities of daily living throughout the decision, which all suggested Vioral could engage in substantial gainful activity. (Tr. 23, 26, 27). The ALJ's decision must be read as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). In context of the whole decision, these arguments are unavailing.

To the extent that Vioral's argument above may be that the ALJ did not specifically address certain pieces of evidence, we note the ALJ is "not required to articulate how [he] considered each medical opinion or prior

administrative medical finding from one medical source individually [,]"
20 C.F.R. § 404.1520c(b)(1), and also that this amounts to a request to
reweigh the evidence, which we may not do. *Zirnsak,* 777 F.3d at 611.

Finally, Vioral contends that the ALJ failed to consider the extent
to which improvement in his symptoms restored his ability to engage in
substantial gainful activity, and that the ALJ was required to point to
specific activities of daily living that he found contradicted Vioral's
allegations. (Doc. 15 at 16-17). However, as we have explained, we must
read the ALJ's decision as a whole and determine if that decision is
supported by substantial evidence. Here, the ALJ considered the
longitudinal medical record, which included evidence that Vioral's
symptoms improved with treatment, and determined that Vioral could
perform a range of light work. The ALJ also pointed to Vioral's activities
of daily living, such as his ability to shop, do laundry, and perform
household chores and personal care. Accordingly, we find these
arguments unavailing and conclude that the ALJ's decision as a whole is
supported by substantial evidence.

As we have explained, we are not permitted at this stage to reweigh the evidence, *Chandler*, 667 F.3d at 359, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence." *Biestek*, 139 S. Ct. at 1154. Given that the ALJ considered all the evidence and adequately explained his decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: February 18, 2025

32